## Appeal of BANNA MANUFACTURING CO. Docket No. 762.

A taxpayer is not entitled to deduct as an ordinary and necessary business expense the cost of automatic attachments for hand-fed looms having a useful life of more than one year.

A taxpayer is not entitled to a deduction for amortization, under the provisions of section 234 (a) (8) of the Revenue Act of 1918, of the cost of automatic attachments for hand-fed looms, installed or acquired for the production of articles contributing to the prosecution of the late war, where they are continued in use in the business after the war contracts are completed, and where their value in terms of their actual use in the taxpayer's business has not diminished.

Submitted February 2, 1925; decided April 25, 1925.

*James C. Peacock, Esq.,* for the taxpayer.

*George K. Bowden, Esq.,* for the Commissioner.

Before IVINS, KORNER, and MARQUETTE.

This appeal is from a determination by the Commissioner of a deficiency in income and excess profits taxes for the calendar years 1918 and 1919. The case was submitted on the pleadings and oral and documentary evidence, from which the Board makes the following

### FINDINGS OF FACT.

1. The taxpayer is a corporation organized under the laws of the State of South Carolina, with its principal office at Goldville, S. C. During the years 1918 and 1919, it owned and operated a cotton mill at Goldville, S. C., and was engaged in manufacturing and selling cotton cloth. The taxpayer is now in process of liquidation.

2. During the year 1918, the taxpayer had several contracts to manufacture cotton cloth for the Quartermaster Corps and the Medical Department of the Army. At the beginning of 1918, it had 352 old-fashioned hand-fed looms, but on account of the fact that there was a scarcity of weavers, many of them having been inducted into the Army, it was unable to operate more than 250 of its looms.

One weaver could operate ten or twelve hand-fed looms, but it was found that, if the looms were equipped with Hopedale automatic attachments, one weaver could, if necessary, attend to as many as twenty-four looms, and that the full normal production of cloth could be maintained, by a smaller number of weavers. Taxpayer, in the year 1918, installed Hopedale automatic attachments on 328 of its looms, at a cost of $28,876.06. The attachment consists of a circular disk, holding 28 bobbins, and feeds the bobbins to the looms automatically. It was found, subsequent to their installation, that while the Hopedale attachments effected a saving in the number of weavers necessary to operate the looms, they also required a greater number of "loom fixers," "smash hands" and "bobbin strippers," so that there was no large saving in the cost of operating the mill. In the year 1919, the number of looms operated by one weaver was reduced from 24 to 18.

During the year 1918, the taxpayer operated about 280 looms, and not to exceed 68 per cent of its product for that year was on gov-

ernment contracts, either direct or indirect. The taxpayer, since the year 1918, has continued to use the Hopedale attachment on its looms.

The Hopedale automatic attachment was placed on the market about the year 1917 and, at the time it was installed by the taxpayer in its mill, was an addition and betterment to the hand-fed loom, both from the standpoint of increasing production and lowering costs. It has been used quite generally in cotton mills since 1917, and is now considered an improvement over the hand loom, because it usually results in lower production costs.

3. The taxpayer charged the amount of $28,876.06, the cost of the Hopedale automatic attachments purchased in 1918, to expense, and deducted that amount in computing its net income for that year. The Commissioner disallowed the deduction, and also refused to permit the taxpayer to deduct the same amount, as amortization of war-time facilities, under section 234 (a) (8) of the Revenue Act of 1918.

4. The Commissioner also reduced the deduction taken by the taxpayer, in the years 1918 and 1919, on account of exhaustion, wear and tear, by the amounts of $2,497.05 and $2,902.07, respectively, and determined that there is a deficiency in tax in the amount of $23,148.73 for the year 1918, and an overassessment in the amount of $904.90 for the year 1919, making a net deficiency of $22,243.83. The Commissioner allowed the taxpayer an amortization deduction in the year 1918 on certain coal-handling equipment, turntable and track. The amount of this deduction was later increased by $241.15, and no adjustment has been made in 1918 income for this amount. The Commissioner has stipulated that the net income for 1918 should be reduced by this amount of $241.15.

### DECISION.

The determination of the Commissioner is approved in part and the deficiency should be computed in accordance with the following opinion. The amount of the deficiency will be settled on consent or on ten days' notice under Rule 50.

### OPINION.

MARQUETTE: The Commissioner has filed a plea in bar to the right of the taxpayer to maintain its appeal as to the year 1919 on the ground that " there has not been since the enactment of the Revenue Act of 1924, a determination by the Commissioner that a deficiency tax is due from the taxpayer," and that " the Commissioner has not since the enactment of the Revenue Act of 1924 proposed to assess additional income taxes against taxpayer for the year 1919." We think that the plea in bar is not well taken. The record discloses that the Commissioner has determined that there is an additional tax due for the year 1918, and an overassessment for the year 1919, making a net deficiency, from which the taxpayer has appealed. The plea in bar is overruled on the authority of the *Appeal of E. J. Barry*, 1 B. T. A. 156, and *Appeal of Hickory Spinning Co.*, 1 B. T. A. 409.

The taxpayer contends that it should be allowed to deduct, as a business expense in the year 1918, the amount of $28,876.06 expended by it in acquiring and installing Hopedale automatic attachments in that year and that, if the deduction is not allowable as an ordinary and necessary business expense, it should be allowed under section 234 (a) (8) of the Revenue Act of 1918, as a deduction on account of the amortization of war-time facilities. The taxpayer also contends that the Commissioner erred in reducing the amount of its deductions for exhaustion, wear and tear in 1918 and 1919, but has presented no evidence to support its contention as to that point. The determination of the Commissioner as to the amount taxpayer is entitled to deduct on account of exhaustion, wear and tear, in computing its net income for the years in question, is therefore approved.

The Commissioner contends that the cost to the taxpayer of the Hopedale attachments is not properly deductible as an ordinary and necessary business expense in the year 1918; that it is not deductible from gross income in that year, under section 234 (a) (8) ; and that the amount so expended should be capitalized and depreciated over the life of the attachments.

It is not necessary, in our opinion, to enter into an extended discussion as to whether or not the amount of $28,876.06, the cost to taxpayer of the Hopedale attachments purchased and installed in 1918, is an ordinary and necessary business expense, and therefore deductible in computing net income under section 234 (a) of the Revenue Act of 1918. .The evidence clearly shows that the expenditure was made for machinery or attachments which were in the nature of permanent additions, improvements or betterments, and that they should have been capitalized and not charged to expense of operation. Therefore, there only remains for consideration whether or not the amount expended by the taxpayer for the Hopedale attachments may be deducted from gross income in 1918, under the provisions of section 234 (a) (8) of the Revenue Act of 1918, which is as follows:

Sec. 234. (a) That in computing the net income of a corporation subject to the tax imposed by section 230 there shall be allowed as deductions: * * *

(8) In the case of buildings, machinery, equipment, or other facilities, constructed, erected, installed, or acquired, on or after April 6, 1917, for the production of articles contributing to the prosecution of the present war, and in the case of vessels constructed or acquired on or after such date for the transportation of articles or men contributing to the prosecution of the present war, there shall be allowed a reasonable deduction for the amortization of such part of the cost of such facilities or vessels as has been borne by the taxpayer, but not again including any amount otherwise allowed under this title or previous Acts of Congress as a deduction in computing net income. * * *

The taxpayer claims that it purchased the attachments referred to solely for the purpose of enabling it to fill certain government contracts for cotton goods, it being unable, because of the fact that many weavers had been drafted into the Army, to procure an adequate supply of labor; that the emergency having passed, the attachments are of no value, and do not enable it to produce more goods or to lower the cost of production, and that the attachments are only retained in use because it will require a further expenditure of money to remove them and restore the looms to their original condition. This presents a question of fact which we must determine from the evidence.

Taxpayers who produced articles contributing to the prosecution of the late war and who, on or after April 6, 1917, erected, installed or acquired buildings, machinery, equipment or other facilities for that purpose, are entitled to deduct from gross income, under section 234 (a) (8) of the Revenue Act of 1918, the difference between the cost of such buildings, machinery and equipment, and their actual sale price or fair market value when discarded, with proper allowance for depreciation while used, or, if they are still in use, their value to the taxpayer in terms of their use or employment in its going business. In the instant case the taxpayer, in computing its net income for the year 1918, is entitled to deduct, if at all, on account of the amortization of the Hopedale automatic attachments in question, the difference between their cost and their value to the taxpayer in terms of their actual use or employment in its business, subsequent to the termination of its war contracts. The taxpayer claims that the attachments were of no value whatever in its going business at the end of the year 1918 or subsequent thereto. We are not satisfied, however, that this contention is well founded. It appears from evidence submitted at the hearing that the Hopedale attachment was placed on the market in the year 1917 and that it was, at the time installed by the taxpayer, and is now, generally recognized as a betterment to the hand loom, in that it ordinarily results in increased output and lower cost of production. A witness for the taxpayer testified that in the instant case the attachments proved to be of little value either in increasing output or lowering costs, and that the value of the taxpayer's mill was not increased by their having been installed, but we are not convinced that this was the result. The evidence shows that the taxpayer continued to use the attachments for a number of years after the war contracts were completed. They were as efficient in their operation as at the time of their acquisition, and their value in terms of their actual use in the taxpayer's business had not diminished. We therefore are of opinion that the taxpayer is not entitled to a deduction for amortization but should be allowed to depreciate the cost of the attachments over their useful life.

In computing net income for the year 1918 there should be allowed as a deduction an additional amount of $241.15, as amortization of coal-handling equipment, turntable, and track, in accordance with the stipulation of the parties.